UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
BARBARA DAVIS,

        Plaintiff,

   -against-

THE NEWSGUILD OF NEW YORK LOCAL
31003, TNG/CWA, AFL-CIO; and LOCAL
REPRESENTATIVES GUILD.

        Defendants.

-----------------------------------------------------X

**COMPLAINT**

**JURY TRIAL REQUESTED**

     Plaintiff Barbara Davis, by her attorneys, Giles Law Firm LLC, complaining of defendants, alleges:

<u>**PRELIMINARY STATEMENT**</u>

     1.    This action is brought by plaintiff Barbara Davis against defendants The NewsGuild of New York, Local 31003, TNG/CWA, AFL-CIO ("the NewsGuild"), a labor union who employed plaintiff as a Local Representative, and Local Representatives Guild ("LRG"), the staff union that represented plaintiff and other employees of the NewsGuild.

     2.    Plaintiff brings this action against the NewsGuild for breach of its collective bargaining agreement with the LRG, terminating plaintiff without just cause, failure to provide medical leave in accordance with the union's contract and past practice, and for excessive workload in violation of the union's contract.

     3.    Plaintiff brings this action against LRG for its breach of the duty of fair representation in failing to investigate plaintiff's grievances, providing misleading and incorrect information concerning both plaintiff's rights under the collective bargaining agreement and their efforts while investigating plaintiff's grievances, and failing to take plaintiff's grievances to

arbitration even though LRG's officer handling the matter admitted to plaintiff that she believed the grievances with respect to her termination and excessive workload were meritorious.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. §1331 and 29 U.S.C. §185.

5.     Venue is proper within this District pursuant to 28 U.S.C. §1391 because defendants maintain their principal places of business in, and do business in, and accordingly, reside in this District.  Venue is also proper within this District pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims occurred within this District.

## PARTIES

6.     Plaintiff Barbara Davis is a resident of the State of New York.

7.     Defendant NewsGuild of New York, Local 31003, TNG/CWA, AFL-CIO is a "labor organization" as defined in 29 U.S.C. §142(3) and 29 U.S.C. §152(5).  Defendant NewsGuild is also, in the instant case, an "employer" as defined within 29 U.S.C. §152(2) in that it was acting in the capacity of an employer with respect to its relationship with plaintiff. Defendant NewsGuild maintains its principal place of business at 1500 Broadway, Suite 900, New York, New York.

8.     Defendant Local Representatives Guild is a "labor organization" as defined in 29 U.S.C. §142(3) and 29 U.S.C. §152(5).  Defendant LRG maintains its principal place of business at 1500 Broadway, Suite 900, New York, New York.

## STATEMENT OF FACTS

9.      Defendant NewsGuild is a union that represents workers in the field of journalism, including reporters, photographers, ad salespeople, and other news media professionals.  The President of the NewsGuild is currently Susan DeCarava ("DeCarava").  The Secretary-Treasurer of the NewsGuild is currently Anthony Napoli. ("Napoli")

10.     Defendant NewsGuild has, throughout the relevant time period, employed 15-25 professional staff, including organizers, business agents (referred to as Local Representatives) and administrative staff.

11.     Defendant LRG is a staff union that represents the above mentioned employees of the NewsGuild.  Defendants NewsGuild and LRG are parties to a collective bargaining agreement that sets wages and other terms and conditions of employment for members of the LRG's bargaining unit.  The Secretary of the LRG is Beverly Sloan ("Sloan").  Sloan was the LRG officer primarily assigned to represent and otherwise assist plaintiff with respect to her grievances.

12.     The collective bargaining agreement between Defendants NewsGuild and LRG restricts the NewsGuild's right to terminate a worker's employment, specifically providing that "There shall be no dismissals except for just and sufficient cause."  The collective bargaining agreement further prohibits the NewsGuild from assigning excessive workloads to any worker and that work assignments should be "utilized in the manner which recognizes their complementary skill-sets and contributions to the organization."

13.     Plaintiff was hired by the NewsGuild as a Local Representative on February 6, 2017.  Prior to being hired by the NewsGuild, plaintiff was an employee in the typographical unit of The New York Times. While working at The New York Times, plaintiff was a member of the

New York Typographical Union, another CWA Local representing the typographical unit employees.  Plaintiff served in numerous positions, including Secretary-Treasurer, Chapel [sic] Chair, member of the Executive Committee, member of the Negotiating Committee, and delegate to CWA district and national conferences.

14.     When plaintiff was hired in 2017, the President of the NewsGuild was Grant Glickson.  Glickson was familiar with plaintiff through her work with the Typographical Union, and hired plaintiff specifically to represent employees at The New York Times.  Workers at The New York Times constitute the largest bargaining unit represented by the NewsGuild, with approximately 1,100 workers, making up over 40%  of the union's entire membership.

15.     Glickson had been elected to office in November of 2016, and defeated prior incumbent leadership, which included Napoli, who had served as Secretary-Treasurer of the NewsGuild.  After being defeated in 2016, Napoli became the Unit Chair for the LRG, with DeCarava serving as First Vice Unit Chair.

16.     Former NewsGuild President Glickson introduced plaintiff at a meeting of the NewsGuild's Executive Board on December 14, 2016, advising the board that he would like to hire plaintiff specifically to represent bargaining unit members at The New York Times. DeCarava and Napoli, who at the time were Local Representatives of the NewsGuild, were in attendance at this meeting.  Plaintiff's hire was subsequently approved by a vote of the NewsGuild's Executive Board, which includes representatives from the NewsGuild's various units.

17.     In addition to representing NewsGuild members at The New York Times, plaintiff also represented members at three other bargaining units, specifically the Jersey Journal, the Foreign Policy Association, and Wirecutter.

4

18.     During Glickson's tenure as NewsGuild President, DeCarava and Napoli regularly disparaged plaintiff and her role both to Glickson and the NewsGuild's Executive Board.  Although DeCarava and Napoli were supposed to represent plaintiff and protect her interests as the Unit Chair and Vice-Unit Chair of the LRG, Glickson advised plaintiff that they instead tried to "throw her under the bus" on several occasions.

19.     In November of 2019, DeCarava was elected President of the NewsGuild after running a campaign against Glickson.  Napoli was elected back to his prior position of Secretary-Treasurer running on a slate with DeCarava.  Several Local Representatives who had been politically opposed to Glickson campaigned for DeCarava during work time.  Plaintiff declined to campaign for either candidate, remaining neutral during the election.  Plaintiff spent her work hours focused on her job duties of representing members rather than engaging in union politics on NewsGuild time.  Plaintiff was excluded from meetings of Local Representatives at the office where, instead of performing their duties representing members, they would plan DeCarava's election campaign.

20.     Shortly after winning the 2019 NewsGuild election, DeCarava met one on one with plaintiff to discuss her role going forward. At the time DeCarava assured plaintiff that she would remain in her position as Local Representative for The New York Times.  At this meeting, DeCarava remarked, unsolicited, "I always hear Grant says you're loyal."

21.     Starting in 2021 DeCarava began to engage in a campaign of political retaliation to marginalize and disparage plaintiff with the intention of firing her or forcing her to quit.

22.     On January 6, 2021, on a day plaintiff was assisting NewsGuild members whose lives and safety were in danger due to the riot at the Capitol, DeCarava contacted plaintiff and

5

advised her that she would no longer be assigned to represent New York Times members, but would instead be assigned to multiple bargaining units across several publications.

23.     DeCarava informed plaintiff that she would first be assigned to units that were not involved in contract negotiations at the time, so plaintiff could first work on grievances, organizing, and other representational matters not related to bargaining.  DeCarava advised plaintiff she would receive training and a curriculum of materials from Chris Brooks ("Brooks"), who she had hired in the summer of 2020 as the NewGuild's "Mobilizing Director."  DeCarava also told plaintiff that she would subsequently be sent to the Rocky Mountain Labor School to receive training on contract costing and other skills related to contract negotiations, as plaintiff's experience was primarily grievance representation, contract administration, and organizing as opposed to contract negotiations.

24.     DeCarava then assigned plaintiff to seven separate bargaining units.  Several of the units to which plaintiff was assigned were known by LRG representatives to be difficult units whose members regularly complained that union representatives were either absent or failed to properly do their job.  DeCarava herself told plaintiff that one unit, Standard and Poors, had a membership that was hostile to the union and had complained about the NewsGuild's representation of the shop.  Even as plaintiff was assigned to seven shops, she was also required to continue to assist the new Local Representative assigned to The New York Times and answer any questions from the membership that were brought to her.

25.     Contrary to DeCarava's prior representations, one of the shops plaintiff was assigned to was already engaged in collective bargaining, and another was commencing such bargaining.

26.     Several members of The New York Times bargaining unit, after learning of plaintiff's reassignment, contacted DeCarava and the NewsGuild to object to her reassignment. The New York Times's Unit Council voted forty to one, with four abstentions, to formally request that plaintiff remain at The New York Times.

27.     On February 24, 2021, DeCarava sent plaintiff a "Written Warning" claiming that plaintiff was responsible for the objections of the workers. DeCarava specifically said that plaintiff improperly sought to "convey your unhappiness with the reassignment" and that plaintiff "attempted to enlist them to reverse the reassignment."  DeCarava's written warning demanded that plaintiff stop communicating with NewsGuild members of The New York Times and threatened her with termination.

28.     DeCarava's allegations were false. Plaintiff did not seek to "enlist" or otherwise solicit members to bring complaints to DeCarava.

29.     On April 19, 2021, plaintiff filed a grievance with the LRG, objecting that the Written Warning violated the collective bargaining agreement between the LRG and the NewsGuild.

30.     LRG and its representatives did not investigate plaintiff's grievance. They did not speak with New York Times workers who would have contradicted DeCarava's claims that plaintiff had sought to convey her disapproval of the reassignment or take any other steps to reverse DeCarava's reassignment of plaintiff.  After DeCarava summarily denied the grievance and refused to provide any particulars in response to a request for information for same, the LRG took no further action.

31.     DeCarava required plaintiff to submit reports on each of her shops every Friday, copying Brooks. No other Local Representative was required to do so.

32.     In or around the summer of 2021, plaintiff advised DeCarava that plaintiff's daughter had been diagnosed with an auto-immune disorder and that plaintiff would need, on occasion, to take her to various medical appointments.

33.     DeCarava then assigned plaintiff to three additional shops, including two shops in the middle of time sensitive collective bargaining. On several occasions, DeCarava demanded that plaintiff attend bargaining sessions or other meetings that conflicted with the need to care for her daughter.

34.     With the assignment of the additional shops, plaintiff was given a workload that greatly exceeded that of other LRG business representatives.  Plaintiff had been assigned eleven separate shops. Six of these shops were engaged in collective bargaining.  Each of these shops were expected to complete bargaining by early or mid 2022.  Other Local Representatives had fewer shops, and any shops in bargaining were expected to be completed by late 2022 or early 2023.

35.     In October of 2021, plaintiff requested medical leave to care for her daughter, whose condition had become more acute and required hospitalization, recovery, and rehabilitation.

36.     Past practice at the NewsGuild allowed Local Representatives to take paid leave to recover from illness or injury, or care for family members with no time limit.  One prior LRG member had been on paid leave nearly an entire year to recover from illness while still receiving pay.  In 2019, when plaintiff's daughter was hospitalized, she took nine days off, using her compensatory time.  DeCarava, as First Vice Unit Chair, advised plaintiff that she was entitled to paid leave without using her compensatory time, and plaintiff was permitted to recover her compensatory time.

37.     As President, however, DeCarava told plaintiff that she could not take any leave and instead demanded that she use any available compensatory time.  DeCarava again regularly required plaintiff to attend meetings and other activities that conflicted with plaintiff's need to care for her daughter.

38.     In April of 2022, DeCarava sent plaintiff a "Final Warning" letter alleging that she had not adequately performed her duties in certain bargaining units. The warning focused on two of the eleven units, the Jewish Daily Forward and TIME.

39.     With respect to the Jewish Daily Forward, the Final Warning provided no specific instances of any poor performance or misconduct by plaintiff, only vague claims that plaintiff had been "disorganized" or "unprepared" in negotiations.  In fact, plaintiff had obtained many of the demands that the bargaining unit had sought, and, in September of 2022, the unit publicly praised the union for obtaining the demands that plaintiff had reached in the tentative agreement. When plaintiff, through the LRG, requested information regarding such specifics, Brooks was unable to provide them, but instead repeated the generalities in the final warning.

40.     With respect to TIME, the Final Warning alleged that plaintiff prematurely agreed to send the video production unit back to work in person after the height of the COVID-19 pandemic, without consulting the bargaining committee.  The accusation was false. No such agreement had been reached, and arrangements for return to in person work were not finalized with TIME until several months later, with approval from the bargaining unit.

41.     DeCarava's decision to discipline plaintiff was in stark contrast to how she handled complaints by members concerning other Local Representatives.  When plaintiff was transitioning from her work at The New York Times, many members complained that the new Local Representative was unresponsive to their concerns and that the union did not respond to

their complaints.  Indeed, DeCarava had chosen to reassign plaintiff to certain shops because members were dissatisfied with the NewsGuild's representation, and specifically informed plaintiff that she was assigned to Fortune because the prior representative had been criticized as unresponsive.  The former Local Representative for TIME and Fortune advised plaintiff that the members at those shops "hate me."  DeCarava took no action against the Local Representative.

42.    After receiving the Final Warning, DeCarava placed Davis under the supervision of Brooks.  To that date, Brooks had not provided plaintiff with the training and curriculum that DeCarava had promised when she first reassigned plaintiff from The New York Times.  When plaintiff had previously approached Brooks about receiving the curriculum and training, Brooks replied that he did not know what plaintiff was talking about.

43.    Even after being assigned as plaintiff's supervisor, Brooks provided no training or curriculum. Instead, Brooks repeatedly disparaged and demeaned plaintiff's performance, regularly sending intemperate and accusatory emails.  When plaintiff raised concerns about her workload while caring for her daughter, Brooks questioned whether she was capable of performing her job duties.

44.    Unbeknownst to plaintiff at the time, DeCarava and Brooks began to solicit negative feedback against plaintiff from other LRG representatives. Brooks did so by telling the other representatives that plaintiff was untrustworthy and falsely stating that plaintiff was trying to get them in trouble at work by blaming them for any problems in the bargaining units.

45.    On October 16, 2022, plaintiff was called to an "investigatory interview" with Brooks.  At this meeting, plaintiff was advised that she was, once again, being investigated for failing to adequately perform her duties.

46.     All but one of the matters for which plaintiff was questioned did not concern complaints by members, but rather "Reflections" prepared by Napoli, two attorneys retained by the NewsGuild, and two Local Representatives who were asked to do so by Brooks and Napoli as part of the negative feedback Brooks had solicited.

47.     The one complaint that came from a member was from the bargaining unit of the Roosevelt Institute, a shop that was preparing to commence collective bargaining. That complaint contradicted certain allegations against plaintiff from the other bargaining units.

48.     For example, while the member of the Roosevelt Institute expressed concern that plaintiff was not going to involve the NewsGuild's counsel enough in bargaining, the "Reflections" by the NewsGuild's counsel said that plaintiff had relied on counsel too often. Similarly, the member of the Roosevelt Institute complained that plaintiff had relied upon and referenced a contract from another bargaining unit as a model for upcoming negotiations, while "Reflections" by Napoli claimed that plaintiff should have referenced the same contract as a model for negotiations for other units (as he had done when bargaining with other shops).

49.     On October 28, 2022, Brooks provided plaintiff with a Notice of Termination and advised her that her employment with the NewsGuild was terminated effective November 18, 2022.

50.     That same day, Brooks emailed plaintiff advising her of her termination while also offering her a proposed severance agreement.  Brooks advised plaintiff that if she did not sign the severance agreement that "Per the LRG contract, you will be provided 15 weeks severance. Severance will be paid out as a lump sum of $42,876.75."

51.     The proposed severance agreement provided the same 15 week severance offer, except that instead of receiving it as a lump sum, plaintiff would be continued on payroll for 15

weeks and receive the payment through her paychecks.  The only additional benefit plaintiff would receive under the severance agreement was an extension of plaintiff's health insurance.

52.     Plaintiff spoke with Sloan and LRG Vice Unit Chair Reema Hijazi, who confirmed that the only differences between signing the severance agreement and not doing so were 1) receiving 15 weeks pay while remaining on payroll versus receiving it as a lump sum, and 2) receiving the extension of health care coverage.

53.     Sloan and Hijazi also told plaintiff that DeCarava said that if plaintiff signed the severance agreement immediately, DeCarava would go to the union's executive board to see if she could obtain additional severance. The severance agreement, however, included a release of all claims against the NewsGuild.

54.     Based on the representations by Brooks, Sloan, and Hijazi, plaintiff chose not to sign the severance agreement, as it provided her with no additional severance, but would preclude her from contesting her termination either under the collective bargaining agreement or in court.

55.     On November 17, 2022, plaintiff, through the LRG, requested that the NewsGuild provide information as to the specifics and particulars of the allegations that led to plaintiff's termination.

56.     On November 18, 2022, plaintiff filed three grievances through the LRG. These included, 1) a grievance alleging that her termination was not for "just and sufficient cause" as required by the NewsGuild-LRG collective bargaining agreement, 2) a grievance alleging excessive workload in violation of the collective bargaining agreement, and 3) a grievance concerning the NewsGuild's failure to grant her requested medical leave.

57.     DeCarava summarily denied the grievances and refused to respond to the LRG's request for information as to the particulars of the grievances.

58.     The collective bargaining agreement between the NewsGuild and the LRG provides that all matters concerning the interpretation or application of the contract shall be handled through a grievance committee selected by the LRG.

59.     At a meeting on December 20, 2022, Sloan and Hijazi confirmed to plaintiff that the LRG would form a grievance committee to determine how to proceed with her grievance. Sloan and Hijazi further confirmed that the committee would not include any Local Representatives who had prepared negative feedback concerning plaintiff to DeCarava, Napoli, and Brooks.

60.     Sloan and Hijazi advised plaintiff that she would be given an opportunity to meet with the grievance committee to explain her case, present any evidence in her favor, and answer any questions or concerns from the committee.

61.     Afterwards, the LRG took no steps to investigate plaintiff's grievances or build a case for arbitration. Rather, plaintiff herself obtained statements from members of the bargaining units she represented, including those units in which the NewsGuild claimed she had been derelict in her performance.  Plaintiff also procured the commitment of members to serve as witnesses at the arbitration on her behalf.  Plaintiff saved evidence in her favor on a shared Google Drive accessible to the LRG members who had been selected to form the grievance committee.

62.     Plaintiff requested that Sloan file an Unfair Labor Practice with the National Labor Relations Board due to the NewsGuild's refusal to respond to the LRG's request for

information.  In response. Sloan admitted she did not know how to do so. The LRG ultimately

filed a ULP, with no particulars, on February 14, 2022.

63.     Between December 20, 2022 and March 7, 2023, plaintiff did not hear from Sloan

or any member of the LRG concerning the status of her grievances, despite multiple inquries.

64.     On March 7, 2023, plaintiff met with Sloan to discuss the status of her grievances,

which had laid dormant for over two months. At this meeting, Sloan advised plaintiff that the

LRG would not take any of her grievances to arbitration, that she had withdrawn the LRG's

unfair labor practice against the NewsGuild, and that the LRG would not seek to negotiate any

additional severance or other benefits for plaintiff.

65.     At this meeting, Sloan conceded to plaintiff that the principles of "just and

sufficient cause" required by the contract had not been met. Despite admitting that the

termination did not meet the standard in the contract, she advised the LRG would not proceed

with the grievance.

66.     Sloan had previously confirmed the merit of plaintiff's excessive workload

grievance.  On November 18, 2023, when discussing whether to file such a grievance, Sloan

confirmed that she did not dispute that plaintiff had been overworked.

67.     At the March 7, 2023 meeting, Sloan also confirmed that plaintiff's grievances

were not submitted to a committee, but to the entire LRG membership, including the members

who had provided "Reflections" or other statements used by DeCarava and Brooks to terminate

her.  The LRG members who had assisted management in the termination of plaintiff were

allowed to vote and discuss the grievance with other LRG members.

68.     When plaintiff offered to assist the LRG in covering the costs of any such

arbitration, Sloan further advised that the decision was not based on financial considerations.

69.     Sloan confirmed to plaintiff that she was entitled to her severance pay of 15 weeks and the LRG would seek payment of same.

70.     On April 7, 2023, after numerous requests by plaintiff to both the NewsGuild and LRG for her severance, plaintiff received an email from Sloan. In it, Sloan advised her that plaintiff would not, in fact, receive 15 weeks severance as was promised by Brooks.  Sloan said that Napoli had since advised them that Brooks's reference to "severance pay" was actually reference to an Annuity Fund.  Sloan claimed that Brooks's explanation was "unclear" and that "none of us caught the distinction at the time."

71.     Brooks's explanation was not "unclear" and explicitly said that plaintiff would receive 15 weeks severance in a lump sum pursuant to the contract.  The Annuity Fund is an employee benefit plan established pursuant to the Employee Retirement Income Security Act. Plaintiff is entitled to the accrued benefits in her account under the terms of the employee benefit plan, not any contractual promise of severance.  Brooks was not a trustee or agent of the fund and not entitled to make any representation as to its benefits.  In addition, Brooks explicitly represented that the 15 weeks severance would be paid to her "in a lump sum." The fund benefit, by contrast, is paid out as a life annuity once the participant reaches retirement age, and incurs significant tax penalties if taken as a lump sum.

72.     Defendant NewsGuild sought to harass and terminate plaintiff not for any bona fide performance issues, but because she was viewed as a political enemy by DeCarava and her supporters. Plaintiff was removed from the shop where she had worked from the beginning of her employment as a business agent and where she had worked as an employee and union activist and had the respect of her peers.  Plaintiff was given excessive and punitive reassignments to bargaining units that were known to be extremely critical of the NewsGuild for

15

perceived shortcomings.  The allegations against plaintiff were refuted by witnesses and

documentary evidence and internally contradictory.  When members of the NewsGuild in these

shops complained about other Local Representatives, the NewsGuild simply ignored such

complaints or reassigned the shop to another Local Representative.

73.     Although the NewsGuild's allegations against plaintiff forming the basis for her

termination were baseless, the termination of plaintiff would not meet the standard of "just and

sufficient cause" even if some or all of them were true.  Prior to DeCarava's efforts to terminate

plaintiff's employment, plaintiff had a spotless record a Local Representative.  Plaintiff had

multiple statements of support from members, including members who said that she was the best

Local Representative their bargaining unit had in their entire work history at their shops.

Plaintiff had been hired for a specific reason, to represent the employees at the NewsGuild's

largest bargaining unit, and was summarily reassigned without consideration of same.  Plaintiff

was given multiple shops engaged in time-sensitive collective bargaining without ever being

given the training DeCarava had acknowledged she would need, and would receive, before

performing such work.  Plaintiff was assigned work that directly conflicted with medical and

other appointments for her daughter, in fact receiving an increased workload after she first

informed DeCarava of her need to care for her daughter, giving her a larger workload than other

Local Representatives.  Thus, even if any of the manufactured allegations against plaintiff were

true, an arbitrator would not find that the principles of "just and sufficient cause" could justify

terminating plaintiff under the circumstances.

75.     Defendant LRG breached its duty of fair representation when it failed to pursue

plaintiff's grievances, including but not limited to, plaintiff's grievance of the termination of her

employment.  Sloan admitted that the termination of plaintiff's employment did not comport

with the principles of "just and sufficient cause" as was required by the collective bargaining agreement between the NewsGuild and the LRG.  Defendant LRG did not provide plaintiff with, and did not have, a legitimate union related reason for failing to pursue the grievance that Sloan conceded had merit.

76.     Defendant LRG's breach of its duty of fair representation was not simply based on the failure to take the termination grievance to arbitration.  The LRG took no more than perfunctory steps to investigate and process the grievance. Plaintiff gathered all the evidence in support of her grievance on her own. The LRG failed to review almost all such evidence, failed to present all of plaintiff's evidence to the LRG membership, and refused to allow her to present such evidence herself, despite promising her the opportunity to do so.

77.     The LRG deceived plaintiff when it advised her that any decision on whether to proceed to arbitration would be submitted to a grievance committee (as required by the collective bargaining agreement) that did not include the LRG members who provided Brooks with material used to justify her termination. Instead the LRG allowed its entire membership to vote, including those who provided management with such material and had a conflict of interest in voting on such a matter. The LRG also allowed members who were DeCarava's political supporters and harbored her animus toward plaintiff to both influence other members and vote on the decision not to take plaintiff's grievance to arbitration.

78.     In addition, LRG failed to fairly represent plaintiff in taking her other grievances to arbitration, taking no steps to investigate such grievances, thereby allowing the NewsGuild to provide plaintiff with excessive workloads that were inconsistent with the purpose for which she was hired and during a period where she was caring for her ill daughter.

79.     LRG also failed to fairly represent plaintiff with respect to her severance payment. Defendant NewsGuild, through Brooks, explicitly informed plaintiff that she was contractually entitled to fifteen weeks of severance pay even if she did not sign a severance agreement.  This was confirmed by the LRG. When the NewsGuild reneged on that promise, the LRG took no steps to seek the money. Alternatively, if plaintiff was not in fact entitled to such severance pay, the LRG misled plaintiff by advising her she was entitled to such pay.

80.     Defendant LRG's actions were arbitrary in that they failed to pursue grievances that Sloan admitted were meritorious, were handled in no more than a perfunctory manner, and were not based on any legitimate union concerns.

81.     Defendant LRG's actions were discriminatory in that they were taken due to plaintiff not campaigning for DeCarava during the 2019 union leadership election.  Defendant LRG also adopted and acquiesced to DeCarava's own political animus toward plaintiff.

82.     Defendant LRG's actions were taken in bad faith in that they misrepresented to plaintiff how her grievances would be handled and how it would be determined whether to take the grievances to arbitration.  The LRG leadership also presented a significantly weaker version of the facts in support of plaintiff's grievance to LRG membership despite knowing of evidence demonstrating their merit.

83.     After plaintiff's termination, DeCarava promoted the Local Representative who reported the Roosevelt Institute's alleged discontent with plaintiff to Senior Local Representative.  Brooks subsequently left the NewsGuild to serve as Chief of Staff to the newly elected President of the United Auto Workers – where he promptly fired the President's aides when they objected to the lack of racial diversity in the union's leadership and staff.

18

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT NEWSGUILD

### Breach of Collective Bargaining Agreement – LMRA Section 301

84.     Plaintiff restates and re-alleges the allegations in paragraphs "1" through "83" of the Complaint as if fully set forth herein.

85.     Defendant NewsGuild and Defendant LRG were parties to a collective bargaining agreement that was in effect during the time of the complained of acts.

86.     Defendant NewsGuild breached the collective bargaining agreement with LRG by, among other actions, terminating plaintiff's employment without just cause, assigning her an excessive and inappropriate workload, denying her medical leave, and failing to pay promised severance.

87.     Plaintiff has incurred damages due to defendant NewsGuild's breach, including but not limited to lost wages, lost benefits, out of pocket healthcare costs, and damage to reputation.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT LRG

### Breach of Duty of Fair Representation

88.     Plaintiff restates and realleges the allegations set forth in paragraphs "1" through "87" of the Complaint as if fully set forth herein.

89.     As the exclusive representative of employees of the NewsGuild pursuant to 29 U.S.C. §159(a), LRG has a duty to fairly represent each of its members.

90.     Defendant LRG breached its duty of fair representation of plaintiff in that its actions in handling plaintiff's grievances and advising plaintiff were arbitrary, discriminatory, and/or in bad faith.

91.     Plaintiff has incurred damages due to defendant LRG's breach, including but not limited to lost wages, lost benefits, out of pocket healthcare costs and damage to reputation.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully asks that this Court enter a judgment:

a)  Declaring that Defendant NewsGuild has breached the collective bargaining agreement between the NewsGuild and the LRG;

b)  Declaring that Defendant LRG has breached the duty of fair representation to plaintiff.

c)  Awarding plaintiff all lost wages and benefits from the date of the termination of her employment until the date of judgment;

d) Awarding plaintiff damages for the value of the excessive work performed in violation of the collective bargaining agreement;

e) Awarding plaintiff damages for paid leave that was denied by defendant;

f)  Reinstating plaintiff to her position or, in the alternative, awarding front pay;

g)  Awarding plaintiff damages for all out of pocket expenses including but not limited to medical expenses resulting from plaintiff's termination;

h)  Awarding plaintiff fifteen weeks severance pay;

i) Awarding plaintiff the costs and attorneys fees in this action; and

j)  Granting such other and further relief as this Court deems necessary and proper.

Dated: New York, New York
        August 28, 2023

Respectfully submitted,
GILES LAW FIRM LLC
Attorneys for Plaintiffs

*Joshua Parkhurst*

Joshua Parkhurst
85 Broad Street, 17th Floor
New York, NY 10004
(201) 577-2644
jparkhurst@gileslawfirmllc.com

## JURY DEMAND

Plaintiff hereby demands, pursuant to Rule 38 of the Federal Rules of Civil Procedure, a trial by jury in the above captioned action.